IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Carrie Beth H. Ostermyer,                                    Case No. 3:03CV7736

                Plaintiff,

   v.                                                                            ORDER

Toledo Clinic, Inc.,

                Defendant

      This case is a dispute over defendant's alleged violation of the Family Medical Leave Act (FMLA). Plaintiff Carrie Beth Ostermyer claims defendant Toledo Clinic, Inc. (TCI): 1) interfered with her FMLA rights by failing to restore her to the same or a similar position when she returned to work; and 2) violated FMLA's retaliation provision by terminating her employment and providing a negative reference to a prospective employer because she availed herself of a protected right under the FMLA. This court has jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 2617(a)(2).

      Pending is TCI's motion for summary judgment as to all claims. For the reasons that follow, that motion will be granted.

**Background**

TCI is a multi-specialty medical center and outpatient surgery center with about ninety practicing physicians. In June, 2000, an opening occurred in TCI's maintenance department. Rather than hire another maintenance worker, TCI's facilities supervisor, Jennifer Johnson, decided to create a new housekeeper position to cater to the needs of physicians.

On June 15, 2000, Johnson hired Ostermyer to fill this position. Ostermyer's duties as housekeeper included maintaining the cleanliness of the building, performing minor maintenance work, setting up the conference center for meetings, changing light bulbs, stocking restrooms, and performing minor landscaping projects.

During Ostermyer's first year of employment with TCI, she was frequently absent from work due to health problems. She was forced to miss work in June, 2000, due to a ruptured ovarian cyst; July, August, and September, 2000 because of ovarian cysts; October, 2000, because of a laparoscopy; February, 2001 because of a second laparoscopy; and July, 2001, due to colitis.

Ostermyer claims that Johnson treated her poorly because of these absences. Ostermyer claims that Johnson allowed other maintenance workers to make up missed time, but refused to let her do so. Ostermeyer also claims Johnson made derisive comments about Ostermyer's personal life and her health problems in front of other employees.

Nevertheless, in August, 2001, Johnson gave Ostermyer a favorable evaluation in her annual review. Ostermyer's absenteeism was discussed during the meeting, and Johnson indicated that her attendance needed improvement. However, Ostermyer still received a four percent raise.

Ostermyer continued to work at TCI through the Fall of 2001. On November 9, 2001, Ostermyer gave Johnson a note from her doctor indicating she would be absent from work because she needed

another surgery. Jill Kopitke, TCI's benefits specialist, informed Ostermyer that she was entitled to FMLA leave for this absence.

Ostermyer returned to work on November 26, 2001, with a restriction that she not lift anything over twenty pounds. Johnson claimed no such work was available and sent Ostermyer home. Ostermyer returned to work on December 5, 2001, without the weightlifting restriction.

On November 1, 2001, ProMedica bought the TCI building where Ostermyer worked. ProMedica rented the building back to TCI. Following the purchase of the building, Johnson had an informal meeting with Ostermyer and the two other maintenance employees. Johnson told the employees some changes were going to occur, but that they should not worry about their jobs.

After Promedica purchased the building, it hired Rudolph Libbe (Rudolph) to provide building maintenance. Rudolph appointed Tim Glassmoyer as the property manager for the building. While Ostermyer was on FMLA leave, Glassmoyer began performing some of the maintenance responsibilities at TCI.

During Ostermyer's FMLA leave, Johnson determined that Ostermyer's position was no longer needed at TCI. Glassmoyer was performing many of the maintenance duties, and the other two maintenance employees, Jeff Lawrence and John Kerris, were able to handle the physicians needs.

Johnson and TCI's human resources manager, Kelly Kennelly, met with Ostermyer on December 6, 2001, the day after she returned from FMLA leave, to inform her that the housekeeping position was being eliminated. Ostermyer was permitted to work for two more weeks and received two weeks of severance pay.

On informing Ostermyer that her position was being eliminated, Kennelly gave Ostermyer TCI's current job postings so she could pursue other employment opportunities with the company. Ostermyer was not hired to fill any of these positions.

After being terminated at TCI, Ostermyer applied for a position at Flower Hospital (Flower). Ostermyer interviewed with Flower and was given a physical. After she returned home from her physical, however, she was informed she would not be hired. This decision was attributed to a negative reference, which Ostermyer claims TCI provided.

Ostermyer eventually obtained a housekeeping position at Mercy Memorial from September, 2002 through January, 2003 and was employed as a secretary at PTX Flooring from November, 2003 to January, 2004.

## Discussion

Ostermyer asserts claims of FMLA entitlement and retaliation relating to her termination. For the reasons that follow, summary judgment shall be granted for defendant on both claims.

### 1. FMLA Retaliation

Section 2615(a)(2) of the FMLA makes it unlawful for an employer to discharge or in any other manner discriminate against an individual because such individual has opposed a practice made unlawful by the Act. 29 U.S.C. § 2615(a)(2).

To analyze a FMLA retaliation claim, courts use the burden-shifting framework outlined by the Supreme Court in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973).[1] *Gibson v. City of Louisville*,

---

[1] FMLA retaliation claims can also be analyzed under a "mixed-motive" theory. However, neither Ostermyer nor TCI has argued this case under that theory. Therefore, I will analyze the case

4

336 F.3d 511, 513 (6th Cir. 2003). Under this framework, the plaintiff must first establish a prima facie case by presenting facts that raise an inference of unlawful discrimination. The defendant may rebut that inference by offering a legitimate, non-discriminatory reason for the challenged action. If the defendant does so, the plaintiff must demonstrate that the stated reason is really a pretext for illegal discrimination. *Harrison v. Metropolitan Gov't of Nashville and Davison County*, 80 F.3d 1107, 1115 (6th. Cir. 1996).

For Ostermyer to establish a prima facie case of retaliation under the FMLA, she must show: 1) she availed herself of a protected right under the FMLA; 2) she was adversely affected by an employment decision; and 3) there was a causal connection between her exercise of a right under the FMLA and the adverse employment decision. *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 314 (6th Cir. 2001).

In this case, it is undisputed that the first two prongs of Ostermyer's prima facie case have been satisfied. Ostermyer availed herself of a protected right under the FMLA when she took FMLA leave from November 14, 2001 through December 5, 2001, and was adversely affected by an employment decision when TCI eliminated the housekeeping position.

TCI contends that there is no causal connection between Ostermyer's FMLA leave and elimination of her position. Ostermyer argues that the temporal proximity between her FMLA leave and the elimination of her position is sufficient to establish a causal connection.

I agree with Ostermyer. In situations, such as this, where the plaintiff was immediately terminated on returning from leave, temporal proximity suffices for a prima facie showing of causal connection. *See*

---

under the *McDonnell Douglas* framework.

*Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 870 (6th Cir. 2001); *Hobart v. Behavioral Connection of Wood County, Inc.*, 2004 WL 1474652, *5-6 (N.D. Ohio July 1, 2004). Ostermyer has presented a prima facie case and established an inference of discrimination.

To rebut this inference, TCI offers a non-discriminatory reason to explain elimination of Ostermyer's position. TCI claims that the sale of its building to ProMedica, ProMedica's decision to contract the maintenance of the building to Rudolph, and Rudolph's decision to place Glassmoyer at the building to perform maintenance work made Ostermyer's position unnecessary.

This reason offered by TCI satisfies its burden. Therefore, Ostermyer must prove that TCI's non-discriminatory reason is pretextual.

A plaintiff can establish pretext by showing that the defendant's proffered reason: 1) has no basis in fact; 2) did not actually motivate its decision; or 3) was insufficient in light of the particular adverse action. *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994).

The first and third types of showings mount a direct attack on the credibility of the employer's proffered reason by arguing it is false. *Id.* To succeed under the first method, the plaintiff must argue that the defendant's proffered reason never actually happened. *Id*.

Ostermyer admits that once Rudolph took over maintenance of the building, Glassmoyer began performing some of her housekeeping duties, and Lawrence and Kerris assumed the rest. Thus, there is a factual basis to support TCI's claim, and Ostermyer cannot succeed under the first option.

To succeed under the third method, a plaintiff must argue that the reason proffered by the employer is false because other similarly situated employees did not suffer the same adverse employment action that she incurred. *Id.*

6

Ostermyer argues that she was treated differently than the other maintenance employees, Lawrence and Kerris, because her position was the only maintenance position eliminated after Rudolph took over the building.

Ostermyer's contention is without merit, however, because Kerris and Lawrence were not similarly situated employees. Ostermyer's duties were limited to housekeeping and minor maintenance work, while Lawrence and Kerris performed major maintenance operations. Lawrence was responsible for working on heating, ventilation, and air conditioning systems, along with electrical and plumbing work. Kerris's duties included maintaining the telecommunications systems, cabling, and networking the physician-owned systems. Thus, Lawrence and Kerris performed different duties than Ostermyer, and their employment decisions cannot be compared with Ostermyer's. *See generally Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992) ("plaintiff must show that the 'comparables' are similarly-situated in all respects").

The second type of showing mounts an indirect attack on the employer's proffered reason. *Id.* To succeed under this method, the plaintiff must admit the employer's proffered reason could have motivated the employment decision, but has to demonstrate that the reason is not what actually caused the employer to make its decision. *Id*.

In support of this theory, Ostermyer cites Johnson's negative comments about Ostermyer to other employees. These comments included statements about Ostermyer's health problems and one instance where Johnson told other employees that insurance rates were going up because of people like Ostermyer.

These comments do not establish pretext. Although the comments were made by Johnson, the person who ultimately decided to eliminate Ostermyer's position, they were not in connection with an employment decision. "Isolated and ambiguous comments are too abstract, in addition to being irrelevant

7

and prejudicial, to support a finding of . . .discrimination." *Phelps v. Yale Sec., Inc.*, 986 F.2d 1020, 1025 (6th Cir. 1993) (citations omitted); *see also Peyton v. Kellermeyer Co.*, 115 Fed. Appx. 825, 829 (6th Cir. 2004) (finding that "isolated" comments made outside of the "decision-making process" and not "proximate in time to the act of termination" did not require a finding that the employee's discharge was motivated by discrimination).

Ostermyer has failed to establish TCI's legitimate, non-discriminatory reason is a pretext for the elimination of her position. Since Ostermyer has failed to show pretext, summary judgment must be entered for TCI on her retaliatory termination claim.

Ostermyer further alleges that she was adversely affected in seeking future employment with Flower. Ostermyer claims Flower refused to hire her because of a negative reference allegedly provided by TCI. Ostermyer has offers no evidence that TCI provided the negative reference. TCI has produced testimony from Kennelly that TCI only releases the date of hire, date of separation, and the position held. Because Ostermyer only speculates that TCI provided the negative reference, summary judgment must be granted for TCI on Ostermyer's retaliation claim for a negative reference.

### 2. FMLA Entitlement

The FMLA protects an employee's right to reinstatement following leave. *Arban v. West Publ. Corp.*, 345 F.3d 390 (6th Cir. 2003). To prevail on an entitlement claim, a plaintiff must prove: 1) that she was an eligible employee; 2) that the defendant was an employer within the meaning of the Act; 3) that she was entitled to leave under the Act; 4) that she gave her employer notice of her intent to take leave; and 5) that the employer denied her FMLA benefits or interfered with FMLA rights to which she was entitled. *Calvin v. Honda of Amer. Mfg., Inc.*, 346 F.3d 713, 719 (6th Cir. 2003). The *McDonnell Douglas*

burden-shifting framework is not employed. *Diaz v. Fort Wayne Foundry Corp.,* 131 F.3d 711, 713 (7th Cir. 1997).

Ostermyer alleges TCI violated the FMLA by not restoring her to her prior position or to an equivalent position as required by § 2614(a)(1)(B). Defendant argues that it restored Ostermyer to her position by allowing her to work for two weeks after she was notified of her termination. While the FMLA does not entitle an employee to a perpetual position with her employer, *see Yashenko v. Harrah's NC Casino Co., LLC*, 352 F. Supp.2d 653 (W.D.N.C. 2005), I find no support for the proposition that an employer may skirt its reinstatement obligations merely by allowing an employee to work for a short period after receiving notice of her termination.

TCI further contends that it did not offer Ostermyer another job because there were no equivalent positions available. An "equivalent position" is "one that is virtually identical to the employee's former position in terms of pay, benefits, and working conditions, including privileges, perquisites, and status. It must involve the same or substantially similar duties and responsibilities, which must entail substantially equivalent skill effort, responsibility, and authority." 29 C.F.R. § 825.215(a). There is no evidence that TCI had any equivalent positions available, only a position in the medical records department which was not substantially similar in duties or responsibilities.

Furthermore, "the right to reinstatement under the FMLA is not absolute. An employer need not reinstate an employee who would have lost his job even if he had not taken FMLA leave."[2] *Pharakhone*

---

[2]

Ostermyer argues that 29 C.F.R. § 825.216 shifts the burden to the employer to prove the employee would have been terminated regardless of taking FMLA leave. While other courts have adopted this position, the Sixth Circuit has yet to do so, and I do not find this argument persuasive. As the Seventh Circuit explained in *Rice v. Sunrise Express, Inc.*, 209 F.3d 1008, 1018 (7th Cir. 2000), "read . . . in

9

*v. Nissan N. Am., Inc.*, 324 F.3d 405, 407 (6th Cir. 2003) (internal citations omitted).

This case essentially involves a reduction in force. After Rudolph took over the building, the work done by Ostermeyer was reassigned to other employees and her position was eliminated. An employee is "not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work. A person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties." *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir.1990). As discussed *supra*, Ostermyer's termination resulted from ProMedica's purchase of the building and Glassmoyer's appointment as property manager. The evidence clearly establishes that, after this transition, her position became unnecessary. Because Ostermyer would have lost her job even if she had not taken FMLA leave, summary judgment for TCI is proper.

## Conclusion

For the reasons stated above, it is hereby

ORDERED THAT:

Defendant's motion for summary judgment be, and the same hereby is granted as to all claims.

So Ordered.

/s/James G. Carr
James G. Carr

---

the context of the entire regulatory scheme, . . . this regulation is best understood not as the agency's understanding as to Congress' allocation of the ultimate burden of proof in the litigation context, but as an explanation of the nature of the substantive right created by the statute."

                                                                Chief Judge